THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 10-24821-JAD |
| | : | |
| WILLIAM J. RICKARD and | : | Chapter 13 |
| CAROLYN M. RICKARD, | : | |
| | : | |
| Debtors. | : | |
| _____ | :X | |
| | : | |
| WILLIAM J. RICKARD and | : | Related to Doc. # 173 |
| CAROLYN M. RICKARD, | : | |
| | : | |
| Movants, | : | |
| | : | |
| v. | : | |
| | : | |
| BAC/FLEET, et al., | : | |
| | : | |
| Respondents. | : | |
| _____ | :X | |

## MEMORANDUM OPINION

The matter before the Court is a *Motion to Approve Settlement of the Underinsured Motorist Claim* (the "Motion") filed by William J. Rickard and Carolyn M. Rickard (collectively, the "Debtors"). The Motion is a core proceeding pursuant to 28 U.S.C. Sections 157(b)(2)(A) and 157(b)(2)(K), and the Court has jurisdiction over the matter pursuant to 28 U.S.C. Sections 157(a) and 1334. For the reasons set forth below, an order shall be entered that denies the Motion as it does not provide for payment to the Welfare Fund (as defined below).

I.

The facts of this case are not complicated. On July 2, 2010, the Debtors commenced their bankruptcy case by filing a voluntary petition for relief under

Chapter 13 of the United States Bankruptcy Code. A little over two years later, on November 16, 2012, Mr. Rickard was in a motor vehicle accident which unfortunately rendered him a paraplegic.

At the time of his accident, Mr. Rickard was a participant in the Western Pennsylvania Teamsters and Employers Welfare Fund (the "Welfare Fund"), which is a self-insured employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA").

As a covered individual under the Welfare Fund, Mr. Rickard had some of his medical expenses paid by the Welfare Fund in the amount of at least $279,498.03. It is not disputed that since the Welfare Fund paid some of Mr. Rickard's medical expenses, the Welfare Fund has a right of subrogation as to any claims Mr. Rickard may have against third-parties arising out of or relating to his injuries.

By order dated April 11, 2013, the Debtors were authorized to retain counsel (in this case Arthur Cutruzzula, Esq.) to pursue personal injury claims on behalf of Mr. Rickard. In this regard, the Debtors agreed, among other things, that attorney Cutruzzula would be paid a contingency fee of up to 40% of any recovery. Thereafter, attorney Cutruzzula asserted demands or claims on behalf of the Debtors against third-parties, including without limitation, an underinsured motorist claim against American National Property and Casualty Companies ("ANPC").

ANPC and the Debtors have reached a settlement with respect to the

underinsured motorist claim in the amount of $250,000. It is this settlement that is the subject of the Motion. Pursuant to the Motion, the Debtors seek to have payment of $100,000 (or 40% of the recovery) paid to attorney Cutruzzula, payment of $1,000 to bankruptcy counsel for the Debtors, and payment of the remaining balance of $149,000 to Mr. Rickard.

The Motion seeks to have none of the proceeds paid to the Welfare Fund on account of their subrogated interest. This omission resulted in the Welfare Fund's objection to the Motion.[1] In essence, the parties agree that if the subrogated interest of the Welfare Fund is paramount to the interests of the Debtors or their counsel, the Motion should not be granted. Conversely, the parties appear to agree that if the Debtors' and counsel's interests are of priority, that the Motion has merit.

On August 25, 2014, the Court directed the Debtors and the Welfare Fund to file supplemental briefs addressing the applicability of Morrone v. Thuring, 334 N.J. Super. 456, 759 A.2d 1238 (N.J. Super. Ct. Law Div. 2000) and US Airways, Inc. v. McCutchen, ___ U.S. ___, 133 S.Ct. 1537, 185 L.Ed.2d 654 (2013), which the parties completed. This matter is now ripe for decision.

**II.**

The Court would note that the parties' briefs were primarily directed to

---

[1] The Chapter 13 Trustee originally objected to the motion questioning the distribution scheme contemplated by the Motion. Since the Motion became a battle between the Debtors (and their counsel) and the Welfare Fund as to who should receive the funds, and since no other creditors will receive a distribution from the settlement proceeds, the Chapter 13 Trustee chose to not prosecute her objection.

00013908 -3-

ownership of the settlement proceeds as between the competing claims of Debtors' counsel on the one hand, and the Welfare Fund on the other. A fair reading of the papers filed by the litigants is that the parties implicitly concede that the Welfare Fund's subrogated interest is superior to the Debtors' interests in the settlement funds. This result appears to be correct in light of the operative plan language outlining the Welfare Fund's subrogation and reimbursement rights.

The Court would parenthetically note that the complete plan (the "Plan") document is not of record, despite the fact that the parties filed a *Stipulation* that avers that the Plan is attached to it.[2]

In any event, without objection, counsel to the Welfare Fund read the following portion of the Plan into the record during the hearing held on this matter on August 29, 2014:

> Any sums recovered by the Covered Individual ... or their representative either by judgment, settlement, or any other means, and regardless of whether such sums are designated as reimbursement for medical expenses incurred or anticipated, past or future wage loss, pain and suffering, or any other form of damages, ***shall be applied first to reimburse the*** [Welfare Fund] ***in full and therefore shall be deducted first from any recovery by or on behalf of the Covered Individual***.

<u>See</u> Audio Recording of Hearing Held in Courtroom D, August 29, 2014 (10:11 a.m.)(emphasis added)

This language of the Plan is clear and unequivocal—the Welfare Fund's

---

[2] An incomplete copy, however, can be found also at Dkt. #61, Exhibit A.

interest in the recovered settlement funds trumps any competing claims of the Debtors, at least up to and until the amount of expenses paid by the Welfare Fund are reimbursed. As to the fees and expenses of Debtors' counsel, attorney Cutruzzula contends that his interest in the settlement funds should, as a matter of equity, be superior to the Welfare Fund's interest in the proceeds. Whether attorney Cutruzzula is correct in this regards turns not only on the language of the Plan itself, but also on applicable case law.

The general rule in the United States of America is that litigants bear their own attorney's fees. The "common fund" doctrine is an exception to the "American Rule" and provides that a "litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." In re Second Pennsylvania Real Estate Corp., 192 B.R. 663, 666 (Bankr. W.D. Pa. 1995). Similarly, an equitable "charging lien" gives an attorney the right to be paid out of a fund in court that resulted from the attorney's skill and labor, thereby extending only to the services rendered by counsel in a particular case. See Novinger v. E.I. DuPont de Nemours & Co., Inc., 809 F.2d 212 (3d Cir. 1987).

Given the fact that the "common fund" doctrine and equitable "charging liens" have been recognized in various contexts, one would think that the application of these doctrines to the case at hand would be a rote exercise. The law in this area, however, is far from routine.

This Court has canvassed applicable case law, and initially found the case of <u>Morrone v. Thuring</u>, <u>supra</u>., to be persuasive. In <u>Morrone</u>, the Superior Court of New Jersey held that an attorney's charging lien on proceeds of a judgment procured through the attorney's efforts has priority over the competing interests of the judgment plaintiff's creditors—including the interests of an ERISA qualified medical benefit provider. <u>Morrone</u>, 759 A.2d at 1244-45. The <u>Morrone</u> court reached this conclusion despite the fact that the plan in that case contained not only a reimbursement provision that allowed the benefit plan to "recover any monies that an insured may receive from a third party alleged to be responsible for an injury," <u>id.</u> at 1241, but also a provision that provided the benefit plan "a first lien upon any recovery, whether by settlement, judgment, mediation or arbitration, that the Covered Person receives . . . ." <u>id.</u> at 1242.

Interestingly, the plan in <u>Morrone</u> was silent as to attorney's fees and who bore the risk (or obligation) associated with payment of the same. In this regard, the maxim that "equity should follow the law" was not invoked. The <u>Morrone</u> court thus concluded that there was no reason to find that the equitable remedies available to counsel under common law were displaced or replaced. As such, the <u>Morrone</u> court concluded that "courts have the power under appropriate circumstances to apply common-law doctrines in ERISA actions." <u>Id.</u> at 1243.

Given that the court in <u>Morrone</u> had equitable powers, the court ultimately held that the benefit plan at issue may have had first lien rights as a creditor of

the judgment plaintiff, but such lien rights did not trump the attorney's equitable charging lien. A fair reading of the opinion in Morrone is that the court found it inequitable for the benefit plan to have the fruits of victory, without paying for the costs of bringing the fruit to market. Under the circumstances of that case, the benefit plan had to take a back seat to the charging lien of the successful plaintiff's lawyer.

### III.

The facts of the Rickard's case are distinguishable from the facts of Morrone. Unlike Morrone, where the benefit plan documents were silent as to payment of attorney's fees and expenses, the plan documents between the Welfare Fund and Mr. Rickard do address which person or persons bear the risk of loss with respect to attorney's fees and expenses. Specifically, the plan documents at issue provide, in pertinent part, that the Welfare Fund "will not be responsible for the Covered Individual's attorney's fees or other costs unless the [Welfare Fund] has agreed in writing to pay such fees or costs." See Dkt. #61, Exhibit A, pp. 2-3.

Given this language, the question before the Court is whether a result different than the one in Morrone should follow? The Court answers this question in the affirmative. Dispositive as to this issue is the decision by the United States Supreme Court in US Airways, Inc. v. McCutchen, supra.

In McCutchen, the benefit plan was silent as to the payment of attorney's fees, and the Supreme Court held that the absence of such a provision left "space

for the common-fund rule to operate." McCutchen, 133 S.Ct. at 1549. Of note, the McCutchen Court also stated that "enforcing [the common fund rule] means holding the parties to their mutual promises." Id. at 1546 (citations omitted). The Supreme Court went on to state that "[c]onversely, it means declining to apply rules—even if they would be 'equitable' in a contract's absence—at odds with the parties' expressed commitments." Id.

Noting that the parties failed to produce a single case in which an equity court applied the common-fund rule when a contract provided to the contrary, the Supreme Court in McCutchen found that where a plan does provide specific provisions in contradiction to an equitable principle, the plan's clear terms will prevail. Id. at 1547. Stated in other words, the Supreme Court held "if the agreement governs, the agreement governs . . . ." Id.

## IV.

In the present case before the Court, the plan documents unequivocally provide that the Welfare Fund is to be paid its subrogated interest first before payment to anyone else. The plan documents also provide that the Welfare Fund is not responsible for the Debtors' attorney fees "unless the [Welfare Fund] has agreed in writing to pay such fees or costs," and no such agreement has been produced or averred by any party. Under these circumstances, the Court concludes that the Supreme Court's opinion in McCutchen mandates application of the plan documents as written and the New Jersey state court opinion in

Morrone is not applicable as being distinguishable.

This Court therefore concludes that the interest of the Welfare Fund in the settlement proceeds is superior to any equitable lien or claim under the common fund doctrine that counsel may have. Under these circumstances, the distributions contemplated by the Motion violate applicable law relating to the priorities between the Welfare Fund, the Debtors (and anyone claiming a distribution through the Debtors such as their legal counsel).

## V.

It is true that counsel may be of the opinion that the outcome of this matter is inequitable—for obvious reasons as counsel's laboring oar produced a favorable and substantial settlement. But, it is also true that equity follows the law, and this Court can find no exception under the circumstances.

The Court also observes that the hue of unjust enrichment in this case is not as blinding as one may think. The claim of inequity or unjust enrichment is tempered somewhat by the fact that counsel could have tendered the prosecution of the underinsured motorist claim to the Welfare Fund, and simply put the Welfare Fund to task from the outset (i.e., force the Welfare Fund to either prosecute the claim or pay for the prosecution). However, counsel did not make any tender. Of course, hindsight is "20/20" and the state of the law was such that the McCutchen case was making its way through the Federal Court system all the while counsel was (perhaps unknowingly) working his file for free.

The soil of unjust enrichment in this case may be further washed away as a result of future labor of counsel. Not to be lost in all of the legal arguments that have been raised in connection with the Motion is the fact that Mr. Rickard has suffered unfortunate injuries. Counsel has acknowledged that third-party claims still exist for counsel to prosecute, which in-turn may harvest fruit for both the Debtors and their legal counsel. Naturally, the Court knows not the outcome of those other third-party proceedings, and offers no substantive opinion with respect to the same. As one of my former colleagues used to say: "We will see what we see when we see it." In any event, counsel has a continuing opportunity to earn a fee with respect to the remaining claims arising from Mr. Rickard's injuries.

## VI.

The outcome of this case should not be construed as the Court concluding that counsel does not deserve his fee. In fact, the opposite is true. The record in this case is that counsel obtained an excellent result, worked diligently, competently, and professionally. Had the Court been writing on a clean slate, the Court surely would have concluded that counsel has earned his contingent fee.

Because the distribution scheme proposed by the Motion violates applicable law, an order shall be entered which denies the Motion. Since the Motion is being denied on this basis, there is no need for the Court to address the Welfare Fund's objection to the Motion based on Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83

S.Ct. 232 (1962) and its progeny. In addition, since the Motion is being denied, there is no need for the Court to determine whether the contemplated settlement should be abandoned pursuant to 11 U.S.C. § 554 and this Court's prior opinion in Cuda v. Nigro (In re Northview Motors, Inc.), 202 B.R. 389 (Bankr. W.D. Pa. 1996), rev'd on other grounds sub nom. Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346 (3d Cir. 1999).

An appropriate Order shall be issued.


Dated: October 20, 2014            /s/ Jeffery A. Deller
                                    Jeffery A. Deller
                                    CHIEF U.S. BANKRUPTCY JUDGE

**CASE ADMINISTRATOR TO MAIL TO:**
Paul W. McElrath, Jr., Esq.
Vincent P. Szeligo, Esq.
Richard A. Estacio, Esq.
Ronda J. Winnecour, Esq.
Office of the U.S. Trustee

Walter J. Nalducci, Esq.
Julianne Cutruzzula Beil, Esq.
Arthur Cutruzzula, Esq.
   Cutruzzula & Nalducci
   3300 Grant Building
   Pittsburgh, PA 15219

FILED
10/20/14 10:45 am
CLERK
U.S. BANKRUPTCY
COURT - PGH